Case number 22-5317 Jane Doe v. Knox County TN Bd Education Arguments not to exceed 15 minutes per side. Mr. Gilbert you may proceed for the appellant. Good morning. Good morning everyone. I'm Justin Gilbert from Chattanooga and I represent the appellant Jane Doe in a rather unusual case in some respects. Jane Doe has what might be termed an allergy to certain sounds. Misophonia is the official name. Here is her very simple ask of the school district. Can we please ban food and gum in my academic classes? It's a request very similar to what Anthony the clerk made just moments ago in telling all of us in this courtroom. Can we please have no food in the courtroom? And so that simple ask, that simple accommodation. This school has decided to be more like a college setting where they've got people can eat food at different times. You know most schools you have the misfortune of my being a former seventh grade teacher and being married to a seventh grade teacher so very aware of the school setting. It's a very unusual school day where there isn't somebody that needs to eat at different times. We'll put chewing gum to the side but whether it's an issue is it's not unusual these days to have people with candy bars and stuff they actually need to eat partway through the day. Very strange to shut that down. You know I've made the mistake of looking at this disease and you know it covers sniffles. I mean I have tremendous sympathy for someone with this predicament so I don't want you to think I'm not appreciating it but I don't understand a world in which someone who where the disease manifests itself through sniffles I don't understand what you could do in that setting. And Mr. Gilbert, as a part of your response to Chief Judge Sutton can you talk about what kind of reasonable accommodations you believe the school could have made given the factors that Chief Judge Sutton just mentioned? Yes I can. Misophonia like most disabilities is wide-ranging. This particular child doesn't have an aversion to sniffles or keyboarding. We'd be applying the IDA, ADA Rehab Act to this disease and that means you're just one complaint away from I mean there's a lot of complaints that could be covered by that disease. But we're applying it to this individual. It's an individualized inquiry and for this particular individual she has gone through years of therapy and the only limitation she has is human sounds of chewing. I mean that that's the limitation there and so to your point and and I did read that you were a former school teacher she is not requesting that there be limitations in the hallways, that the students not eat lunch. Head-scratcher, why don't you want to do the exhaustion? I mean let's just I get the point that it's a hurdle but if you go down that road theoretically you could amend your complaint so now you have three arrows in your quiver, right? You have a whole new claim. That's good. Another possibility of relief. Exhaustion forces everybody to come to the table and you know if they set up a plan for your client that you're not comfortable with, excluded from the specialized math, you say no and you say that's unreasonable. So I just I'm just kind of puzzled why this case is here at this in this way. And just one more point, the more you force us to think about it solely through the lens of 504 and the ADA, the more we're going to be inclined to sit here and just go wait a second is this is this really plausible? And the most plausible is actually IDEA if you ask me because that's customized and as you use the word individualized. I'm glad you asked me that judge and I'd like to refer you to a case that's not in my brief, should have been, didn't find it, but it's McIntyre versus Eugene 976 Fed 3rd 902 9th Circuit 2020 case that I think addresses that head-on and if I thought for a second that she could get relief under the IDEA, I would take her there. I have probably 25 cases and there are very many advantages of the IDEA, but she cannot get it. She doesn't have an IEP, she doesn't qualify for specialized discussion. But she has a 504 plan. She does. That's very close to an I mean that's No. That's like a kissing cousin of an IEP. It's it's individualized, it's the same. But if you, just hear me out, if you have your individualized rehab act claim, or plan, you're not happy with it, right? You want more than they gave you. Why not seek more through the IEP? It doesn't provide relief. If you look at 20 USC 1401 3A2, it's not enough to have an impairment like the IDEA, like the 504. You must need specially designed instruction. And a ban on chewing gum and food is not specially designed instruction. Do you think if she needed specialized instruction? I see a lot of cases that suggest when you need specialized instruction, then you get the related services portion of it, and then this might fall within that. So would you agree that this could potentially fall within the IDEA if she needed other types of instruction? It falls outside the IDEA because she doesn't need specialized instruction. If she did need specialized instruction, then absolutely. So what happens in discovery in this case? It comes out that she could benefit from some type of specialized instruction. I assume you take the position that the ban on chewing is itself not specialized instruction? Of course not. But it does. So I guess two questions. Number one, it does, the regulations do define instruction as adaptations to the delivery of instruction. So why wouldn't you call this, the school has the delivery of instruction in a classroom in which eating is allowed, and you want to change the delivery of the instruction to a classroom in which eating is not allowed. So that's the first question. Why isn't this itself specialized instruction? And then the second question is, if it turns out that she would benefit from some type of modification in the delivery of the instruction, does that suggest that exhaustion might get triggered midway through the suit? To your question of whether delivery without eating food or chewing gum is special instruction, the answer is no, and it never will be. And this is a great frustration of the ALJs, I would say, that special education and special instruction is a change. And it can be for a child with an intellectual disability on one end, it can be a child with gifted on the other end. But you're actually changing the instruction itself. But isn't this the change? Isn't the change, so you wouldn't, so it's kind of vague where the difference between the, do you think that it's only limited to the content of the curriculum? I think that it can be methodology or content of the curriculum, yes. But let's not make the mistake that the motions panel made that says, well, in an ADHD case, if you get preferential seating or something like that, we suddenly turn an for a smaller group of kids. And we do not need to take the resources of the IDEA and suddenly throw all of our 504 kids who need an accommodation. And yes, it's, I guess, as Judge Sutton said, it's a cousin, but it's different. If you do not have specially designed instruction, you don't fall in there. What's the practical answer to why it hurts to put, they're the ones that have to go through exhaustion? Because you're disabling her. You're disabling her under a different law. She still has her other claims. We're not throwing those claims out under this theory. You throw those claims out if you throw everything else out and you're forced to say, are we going to say anyone chewing creates an, you know, an accommodatable disability. That's, you know, that's the risk you have by the way you're litigating this case. What I don't understand is why, what is the downside? It's almost like mediation, but customized under a statute. Bring the players together. Is there a way to solve this problem? Make it a little easier for your client and something that doesn't defeat the big picture goals of the school. Why would that hurt? I just don't get it. In Frye, the Supreme Court took up that very question. Why would a service not hurt? No, you did this the first time and you're going to do it again. I don't want to do what I don't have to do. I'm trying to figure out why the want. I just don't understand the downside of going down this road. Well, in Tennessee, a due process hearing is a trial. And so you have an administrative trial calling witnesses. It is quite an undertaking for no relief available. And so when you ask me why does it hurt, it hurts to go into a discovery. We don't know what they're going to say about accommodations. When you bring them together, you learn what they're going to say. I mean, you say mini trial. We decide in your favor that you don't have to exhaust. You get through a motion to dismiss. What's going to happen? Discovery about what kind of accommodate. I mean, you're going to end up in the exact same place. There's nothing else to talk about in this case, right? You have to talk about accommodation and whether it's reasonable. That requires the very, whether you want to call it mini hearing, rule 26 discovery, I don't care. It ends up in the same place. And I just can't understand why this narrow-minded view of things. I wouldn't say it's narrow-minded, Judge. I would say there's a limited amount of resources. Self-defeating. And so we're trying to choose the right place for this case to go. And if she doesn't have an IEP... Do you defer? So I know that we're supposed to give some amount of under the IDEA, but would it be de novo review for the ADA claims and the Rehabilitation Act claims? Yes, I believe it would, in fact. So there's no, so going through the administrative process doesn't in any way affect your ADA claims then? It doesn't help it either. It doesn't, right. It doesn't affect, it wouldn't help it. If you ask for a jury, it would be a point... Is it delay then? Do you think that the agency is going to take too long? Because I have Chief Judge Sutton's instinct. It's like, maybe the ALJ will say that she is entitled to some specialized services. You don't know until you ask. Worst case scenario is the ALJ denies, and then you're here in court with your ADA claim, your Rehabilitation Act claim, you just said that it's de novo review. So what's, if it's not delay, if it's not, it doesn't affect your claims. I see no downside to just going through the normal process for school kids. I'm clearly out of time if I may respond to that. Judge Murphy, if we start over in the IDEA, I'm not saying it would be ultimately prejudiced or you'd lose a claim. I'm saying that it is an exercise that would do us no good because this is the, is that the same answer to why not mediate this case? Or is, have you tried mediation? We've, no, we tried to get a preliminary injunction and we never could get heard, so we've not done mediation yet. Have you done, so you haven't done mediation with our court? The Sixth Circuit? We have a very good mediation service. Have you invoked it? Have you used it? Yes, no. The parties did not agree to mediate in the Sixth Circuit. Did you want to mediate? Of course. So you, but you realize why, I'm asking that question for the same reason I'm asking the IDEA question, which is, this just seems like the kind of dispute that in a sane, civilized world, you ought to be able to work out among the interested parties without the sharp-elbowed force of litigation. And I can't tell if you want that or not. I do want that. The child has been to the emergency room, has been in pain, so we filed the preliminary injunction for the fastest possible relief, and we never could get it. If we could get it, easier, simpler, we would, but under the IDEA, she cannot get the relief. When I get to that hearing officer, I'm going to have, I'm going to have the opposite effect. Why are you dumping these cases on me? This is a 504 case. We don't have jurisdiction. It seems like you're veering away again from where Judge Sutton was taking you, and that is to mediation. And I heard you say, yes, I'm amenable, and so I think you ought to put a period there. Thank you. Are you amenable to mediation? Your Honor, Knox County was informed that the plaintiffs were willing to consider alternatives, unless it was going to be decided under the IDEA. You guys are really, you guys have went to the same script. Are you amenable to mediation? I'm asking you, what you can control. If the plaintiffs are willing to consider alternatives, absolutely. May it please the Court, my name is Amanda Morris, and I'm here on behalf of Knox County. And the real issue I want to address is that this is not a novel issue. This is not an unusual case, and my opposing counsel said that this misophonia might be termed a sensitivity or an allergy. It also might be defined as an other health impairment under the IDEA. That's true, but the IDEA defines free appropriate public education as a change in special education. So under your view, under the, so we have to take the complaint as pleaded. The complaint as pleaded suggests that the student needs only one thing, a ban on chewing. And I don't see how a ban on chewing as a type of modification of special education. She might have a health impairment, but that itself is not enough under the IDEA. You need to show, or they need to show, that they're being denied a free appropriate public education, which is special education or related services. And I don't see any request or need for a complaint at face value. It pleads that she doesn't want special education and that what she believes will solve her problem is a ban on chewing and eating, not just gum, in academic classrooms. Why isn't she allowed to be the master of her complaint? Fry says that. Fry also says, though, that it's about the IDEA and exhaustion is about relief that might also be available. And if the grabber man of the complaint, even if they don't use the magic words of a free and appropriate public education, is Why isn't this just like a seeing eye dog or the wonder the dog in Fry itself? It seems like she's not, that's the category that it seems more intuitive to me or would fall in. It's not anything about the way the teacher teaches the class. It's just about the physical atmosphere of the classroom setting. Well, and in Fry, the dog was about the physical, her physical ability to move with confidence throughout the world, throughout the entire facility. The dog itself was not absolutely necessary to their education. I would point this court to, it's an unreported case, but LG versus Board of Education actually does an analysis of Fry and talks about how in Fry, the dog was not necessary for her to receive educational benefits. It was necessary for her to access the building, just as it would be to access the library. In this case, though, if the plaintiff, because of her condition, is in pain or actually has to be out of the classroom and in the doctor's office or something, she can't get that education if this chewing and all that is going to interfere and be a barrier to her getting that. So isn't that different in some sense to the argument you're making in Fry? I do not believe so, Your Honor, because the ADA is about general access. If this was about just access, they would not be asking for this reasonable accommodation in academic classrooms only. Their complaint specifically mentions what she wants is access to the existing instruction and the general education curriculum. That is the exact purpose of the IDEA. In fact, the regulations actually say that an IEP is developed with the point to do functional, behavioral, academic goals to allow children... Just to clarify, do you think, so the request she has made in her complaint is for a ban on chewing. Would you view a ban on chewing as special education? If an IEP team decided that was a reasonable accommodation as part of the plan, it might be. It might be an altering of the instruction. There are also other ways that that instruction could be modified. So just the ban alone, if that's the only thing, it's your position that that would be special education? No, Your Honor. I believe that she has to go through the process, have an evaluation, develop an IEP, and an IEP might solve... How do you think the process of the complaint should work? I want to just while you're doing IEP, tell me how similar an IEP is to the Rehab Act plan. Okay, so... Which she already has, right? So how similar are those? She does, in fact, have a 504 plan that has a number of accommodations, breaks, additional times. An IEP is actually broken down by the IDEA and it has specific things that have to be there. There has to be progress monitoring... Slow down a little bit. I'm trying to... You're answering some good things, but not getting what I'm trying to figure out. Think Venn diagrams. When someone does an IEP, do they start with the 504 plan if there's one in place, or is it just kind of irrelevant to them and you kind of start anew? It is an individualized process. We do have many students... Isn't a Rehab Act plan individualized? I'm sorry? Isn't a plan, a Rehab Act plan, also individualized? Yes, Your Honor, and it's a plan designed to provide access to the public facility. An IDEA plan, an IEP, is a plan that is designed to provide access and also let that student gain the educational benefits of the program itself. And I would assert that that's what they are asserting. She is being denied. If there's no wheelchair access to the school, a student in a wheelchair will not be able to gain access to the educational benefits of the school. So I don't see how your argument doesn't prove too much, because you could always say somebody who cannot get access to the school cannot get access to the educational benefits. Therefore, the IEP is relevant. We know the prototypical example of the Rehabilitation Act would be the wheelchair accessibility. And so under the ADA for wheelchair accessibility, for example, if it's an existing building, they do not have to add wheelchair access if another school might already have ramps installed, as long as they can access the facility or the similar program. That goes to whether there's a reasonable accommodation. It doesn't go to whether you have to exhaust under the IDEA, which is what we're talking about now. Right. But a wheelchair access would be they would be complaining about access to the facility. The complaint taken at face value specifically says that she is seeking access to the curriculum, instruction, and that her grades and a learning gap is being caused. The ADA doesn't say, you don't have a ramp, so I have a learning gap. Someone files a complaint that says, you don't have a ramp, so I can't get into your building. That's why you care. So I asked the other side why they care about this. Why do you care? They've decided to bring two claims, not three. Usually when you're a defendant, you're like, hey, I'll take that, right? All I have to do is win twice, not three times. I'd be stunned if you're nervous about not being able to show this is not a reasonable accommodation. Why are you litigating against this? Knox County is taking this case because they believe that an IEP might fix this situation. Opposing counsel talks about exhaustion. Did you propose that in mediation? Did you say, you know, when we're talking about mediation, we know you're reluctant, but we have some experts here. Why don't we sit down and we can just ignore IEPs, IDEA. Let's just solve the problem. And did you try that? Again, Knox County was informed that the plaintiffs only wanted an accommodation under the ADA and they would consider no other option. Give it to them. I don't understand. It's so ridiculously legalistic to say this problem can only be solved through this route, through this subsection and this regulation, double I, you know, subparagraph, as opposed to saying, you're a person, we're a school, let's sort this out. I just don't understand why, if I'm going to give him a hard time, I feel like you deserve it as well. I absolutely understand. Your Honor, it's not before the record, but while this case was pending, the school has reached out to the family and asked if they wanted to have an IEP team meeting to start the evaluation process. Just use the word accommodation and see how it works. Why can't you use that word? Make it an accommodation and never use the word IEP, even though in your mind that's what you're doing, who cares what it's called if it can fix the problem? Well, the IDA cares and the law cares because they have to have an evaluation to develop a plan. Why, getting back to what he said, why do you have to put a label there in order to look at solving the problem for a child, a student who wants to have, you know, a full education and not be in pain and running to the hospital because of it? Well, with or without the label, it does require the process is still first an evaluation and that a gathering of the team members to determine what might be best and what might benefit the child. It might not be a ban on chewing. I mean, it might be behavioral services and coping skills to help her learn to cope in real life. But are you, I'm just trying to help you out, are you making the point that if we don't specifically invoke IDEA, there are limitations on how we can use people in our school to help her or there's limitations on getting reimbursed for helping? I'm just trying to figure out why it's so rigid as opposed to saying, you know, forget what we call this, let's just get together and talk through it. Are there certain types of services that if you don't specifically invoke the IDEA, you don't get reimbursed or you can't use this special instructor or something? Is that why? I'm trying to help you. I'm not really understanding the question. I mean, the IDEA is just part of the function and we have federal regulations that we have to follow in order to provide special education or related services. Does one have fees? Is this a fees issue? Are there fees under Rehab Act and ADA claims but not under IDEA claims? I mean, attorney's fees are available under the ADA and... Are they available under the IDEA? Yes, after you exhaust the remedies. So it's equal there. It's just part of the process that schools have to go through. If she has, if she's a student with otherwise health impairment and evaluator, there's a two-part question. Does she have a disability? I don't think anyone disagrees that she would probably qualify under OHI for heightened stimuli to the environment. And the second question is, does she need special education services? And that does have to be... Do you agree with the regulation that says there's a distinction between special education services and related services? And in order to qualify for the IDEA, you need to show that she needs special education, not just some other type of service. So I don't know that the behavioral services would be enough. What I'm asking is kind of what is the school district's theory of what type of instructional change might help her? Well, right now, I mean, I do believe it would be a behavioral modification, some TPP or therapeutic services. She would be assigned... Is that instructional? It can be. Instead of related, instead of the related services under the IDEA? I mean, well, there is the regulation that says related services can count especially designed instruction. That's 300.39. Well, I read it, I guess I read it differently. I read it to say, if a student with a disability needs only related services, then that student doesn't qualify for the IDEA. And that would depend on the related service. I'm citing 34 CFR 300.39 that says specialized, specially designed instruction can include related services. The problem with this issue is that this is designed to be decided by a number of school members who get together and talk about it. So like therapeutic services where they might come into the classroom to help her extend the time she can stay, who might be providing her instruction outside. Maybe the setup is she actually zooms into the classroom which might minimize the rest of the noises. All of that would be specially designed instruction. You are modifying the way the instruction is delivered and the manner it is delivered. And that's the definition of specially designed instruction. Can I ask also, I just had a pleading question. So this is at the pleading stage. I view this as exhaustion as an affirmative defense. Usually you don't think, you don't have to plead around affirmative defense. So you don't have to plead that your claim is timely. You don't have to plead that you're exhausted. It's on you, it's on the defendant to assert that type of defense. And so I think, aren't we limited by just what we say in the complaint and then maybe your arguments would work down the road like on summary judgment that you present evidence showing that there's these other services available and that she didn't do this. I'm just curious about the procedural posture of how we're supposed to litigate the exhaustion defense. Because Frye does say the plaintiff is the master of the complaint. And so as long as she says she only needs this one thing, it seems to me at this stage of the case, we have to take that as true. Well, Frye did specifically say though that there are the two questions looking at the complaints and they specifically says it does not matter if they don't use the words IEP or free and appropriate public education. You brought up the example of Zoom as a way to deal with the problem because you could maybe not notice the chewing. Judge Murphy is asking the question, well, the complaint doesn't say anything about Zoom and we don't know what discovery is going to show. This is my frustration about not getting everybody in the room together because you just don't know how you might try to deal with this. But Zoom is a very good concrete example of something that would look like an IEP. It could develop as an idea three months in and he's asking what do we do with this at the motion to dismiss stage? Do you get the point? Yes. And so I do believe this can be decided just based upon the motion to dismiss. I think looking at Frye and Perez and LG, her complaint alleges educational harm. At this point we say no exhaustion. Discovery happens. It starts to appear that Zoom is an option. At that point we now realize, oops, it's looking like an IDEA type relief. Now we do some exhaustion. I believe that's the exact purpose of exhaustion is to avoid that sort of frustrating we have to meet, we have to do discovery. On the face of this complaint, it is clear that she has to exhaust her administrative remedies under the IDEA. Can I ask you just about the two questions? It seems to me, so Frye asked the two helpful questions. Do you think a teacher could under the ADA, if a teacher had this condition, could seek an accommodation of no food in the classroom? To seek an accommodation for not being able to access the instruction? No, I do not. But under the ADA, just not being able to access the physical facility because every time I'm teaching, a student starts eating and I have to flee the classroom, therefore I can't access the classroom. I do not believe so, Your Honor, because I think teachers have control of their classroom. They could decide that on their own without seeking remedies for the ADA. What if the school said, you can't ban food in the classroom, the teacher says, I need a ban of food in the classroom because I can't teach because I have this condition? Respectfully, that's not what this accommodation would be. In this scenario to be equivalent, it would have to be a teacher saying, I need this accommodation. That's what she's asking for. She's asking for a ban on food. In her academic classrooms to access the instruction. That is a remedy that is also... The way Fry suggested is we're supposed to ask if other people could request this accommodation. It seems to me a teacher could. It seems to me she could request this accommodation in a public library. That's the other question that Fry asked. Could you ask for no food in the library? Same type of thing? Honestly, Your Honor, I would argue that that would not be a reasonable accommodation. I do not think anyone could go to a public library, could ride the light line, whatever it is called here. I might agree with you on the merits. But that goes to the merits of whether it's in a reasonable accommodation under the ADA. It doesn't go to whether it's under the ADA or the IDA. We're talking about exhaustion, not the merits. And respectfully, no one else could go to the library and say, you have to ban food so that you can teach me how to read. It's sort of a different comparison because that is what she is requesting the accommodation for, to access her instruction in the curriculum, not the facility. I see your light's been on for a while. So thank you very much. We'll hear rebuttal. Thank you, Your Honor. I want to begin by thanking you all for being so well prepared on this. And Judge Sutton, to your very practical point of why can't we just get together and resolve this, in paragraph 19 of the amended complaint, we have alleged that the parents filed an appropriate grievance before filing any lawsuit asking for the accommodation. That's what you do under 504. Typically it's a superintendent grievance. It's handled administratively. The IDEA involves this complex gathering of an IEP team, this multidisciplinary team, and you look at specialized instruction. It's the Rube Goldberg of relief in this case. In other words, that's a complex machinery for all we need is an accommodation in this case. And to your question of a Venn diagram, I like that as well, but the IDEA is the smaller group. The 504 is the larger group. And so that's why it's important that we don't just dump all the 504 kids and say, well, this is specialized instruction. What do you make? I mean, the test is not whether she wants specialized education, it's whether she needs specialized education. And the Zoom hypo seems to me it's a change to the curriculum. It suggests that it could be helpful to her. So it does suggest that she might be eligible for relief under the IDEA. So it doesn't make sense, but the problem is once we get to discovery, we determine that you should have exhausted, then we'll have wasted all this time where you could have just gone and tried to exhaust at the outset. You said it's like a waste of time. Well, Zoom would not be an accommodation. That would be an exclusion of her. She wouldn't be around all her typical peers. We understand that would be the position you would take. Put that to the side. The point is you learn as the case is going on that there might be a way in which there's special educational services. That's what's behind his line of questioning. That's why we're frustrated about trying to figure this out at the front of the case when we know things are going to evolve through discovery, which you want, right? I take it you want discovery. I could try the case today. I already know that the math teacher does what she needs, spit out your gum, don't eat in class. I already know that in technology where there's 3D printers, there can't be gum or food. It works. We don't need to be more complex. We don't need to run her through an IDEA machinery and delve into what is specialized instruction. She just needs no eating and gum chewing in history and English. That's it. That's not what the IDEA is for. It's not necessary. It's not appropriate to take resources. I noticed you make an exception if people need to eat food for medical reasons, diabetes. Is she not triggered by that, though? It wouldn't affect how it manifests and therefore it wouldn't affect how it affects her. Dr. Storch, the Baylor College of Medicine physician, addresses that and he says in that case if there's a child with insulin-dependent diabetes, you would physically distance in that case within the classroom. What she's experiencing right now is eating around the clock, Cheetos, lunch. Tell me how this works. What if the accommodation, the mediation, if people are going to chew gum or eat because this is what the school wants to allow, they just have to separate them within the classroom. You just acknowledge that would work. Doesn't that start to sound like an IEP? No. I'm talking about if you have one person with diabetes. You're not going to have a classroom. Stick with it. There's no way that manifests itself through an IEP? Here's how it's going to work. In history class, here's how this instruction is going to be delivered. If anyone's chewing or eating, they have to be in this part of the classroom. She's on that side of the classroom. You would say that's still 100% ADA relief? That's not delivery of instruction. She wants the same instruction, the same math, same American history. She's not intellectually disabled. She's not gifted. It's the same instruction. In fact, she even says the instruction is the same. If it's the teacher that's got the need, I guess she has to sit farther away from the teacher. Right. That's still the same instruction, though. It's the same equations. It's not specially designed instruction. That's why we win under a textual analysis. All right. Well, thank you very much. We're going to have our mediation office contact you, and you can do what you want with it. It's voluntary. They don't talk to us about your conversations, but it does seem like a case that might be amenable to it, so it might be worth trying. Thanks very much.